Last case of the morning, Deemer v. Beard May it please the Court, Paul Hughes for Plaintiff Appellant James Deemer. I'd like to reserve four minutes of rebuttal. That's granted. Thank you. Your Honor, this case presents the question of whether an individual who presses a claim for unconstitutional confinement by the state may bring that claim in a Section 1983 action in the limited circumstances where that individual lacks the ability to press a federal habeas claim. In this case – But why is that significant? I mean, in heck, Justice Scalia basically said, you know, the fact that somebody's out, you know, the fortuity of that really doesn't matter. And the position that there may be some situations where we don't want to apply this rule was pretty much rejected. Was it not? Your Honor, a few points on that. First, I think the rule that we advocate is consistent with the principle that motivated heck, which was, as we explained in our briefing, that the statutory reconciliation between Section 1983 and federal habeas. Heck said that when habeas is available, you can't use Section 1983 as a means to circumvent that. That has no bearing on a case like this when federal habeas is not available. Well, that's not what – I mean, actually, the opinion aligned it with malicious prosecution. It really doesn't talk about availability. It talks about the conflicting policies. Well, with respect to the extent that heck itself did look to malicious prosecution, that's a consideration that is not relevant in this particular case because here there's no question of malicious prosecution. Even though heck applies in this case, this is really a claim of false imprisonment. So even if one were to look to the common law analog of malicious prosecution, where Justice Scalia said favorable termination was part of the case, that still doesn't say anything about this case, where the challenge is not whether he was lawfully incarcerated in the first place. It's conceded he was. The question was when did his term of imprisonment expire. And common law analogy to that claim does not have the same kind of favorable termination. Well, Scalia's saying once you're out, you don't have a complaint anymore. Forget it. Your Honor, I don't think heck squarely just did not address that question. The litigant in heck was incarcerated at the time. He had brought federal habeas actions that had been denied, but he was still incarcerated. And in fact, subsequently in the Mohammed v. Close case, the United States Supreme Court expressly noted that it had yet to resolve whether or not heck still applies in these circumstances. And subsequently, seven other circuits all have agreed that heck does not foreclose this kind of argument and specifically look to the Mohammed v. Close. Except we rejected. We rejected. In Williams, we rejected the— And two other circuits rejected. The Second Circuit. Yes, Your Honor. In Gillis and Williams, the Court did look to this question. A few points to that. First, I think both of those cases are more factually narrow than the — are distinguishable from our case, which is a narrower case. In both of those, both Gillis and Williams, Your Honor, the litigant in those cases did not have a federal habeas claim because of their affirmative conduct. But where does it say in the jurisprudence that that matters or should matter? In virtually every circuit, perhaps with the exception of the Second Circuit that has adopted the rule we advocate, six circuits all say that that distinction is, in fact, the critical one. But we didn't say that. We didn't rely on that in Williams. We didn't say, oh, by the way, he blew it himself, and so he's to blame, so — That's right, Your Honor. The Court did not rely on that particular distinction. But because it was in the category of case where it was his affirmative conduct, I also don't think the Court rejected the argument that we press here. Is it your position that — are you arguing current availability, unavailability to pursue habeas because he's been released? Or are you arguing that he never had the ability to pursue federal habeas even when he was in jail because his sentence was too short? Or do they run together? It's absolutely the latter point, Your Honor. So that — okay. So you would say you want to essentially advantage someone who gets a short sentence. In other words, if you get a sentence of a year, you get a sentence of six months, you get a sentence of — who knows? You'll have to set some sort of a time frame here. We can't just say short. It has to be defined. Then you can ignore everything else and come right in on the 1983. You don't need a favorable termination. You don't need anything because the sentence was too short to either get a state court decision or to pursue a federal habeas. And, Your Honor, I think the rule that is applied in the other courts and what we believe is correct is it looks to the practicalities of the situation. If in the circumstances of a particular case, federal habeas is a practical impossibility for the litigant, not that somebody sat on his rights like the Williams case, but it was actually impossible then for them to pursue habeas, nothing in heck would suggest that that claim is barred. Okay. Let's assume you're right. But that — but then you're saying that if you get a sentence of a year, six months, you don't even have to look at heck. You come right in on the 1983. Well, Your Honor, I think it still would look to the conduct of the individual litigant. But I think you may be right that the implications of that, if the sentence is too short — The implications are enormous, aren't they? Well, Your Honor, I think the implications of the reverse rule of saying that somebody in that circumstance would be categorically without a federal remedy to challenge the underlying conviction I think would be quite enormous. And I don't think there's any suggestion that Congress thought that in creating the federal habeas remedy, it was going to take a whole class of people and put them inherently forever out of federal court. But isn't this why the Supreme Court has got to figure this out? Well — We have circuit precedent here in our circuit. We have Williams. We have Gillis. There are other circuits who — and I think the Mohammed footnote said something about the issue is unsettled. They recognize the issue is unsettled. We can't settle it. And I'm surprised at your answer to Judge Barry's question about what matters. Does it matter that his sentence is short or does it matter that he's out? Because my view or one argument I thought you would have was that since the whole — this whole principle is based upon the conflicting nature of habeas in 1983, if you haven't — you know, if you would decide in the 1982 action that it was wrong, but then the person's — you know, you get money because it was improper that you were in jail, but you're still in jail. And yet if you're out, is there — couldn't an argument be made that there is no intersection or conflict anymore? Because the person's out. The result you're going to get — actually the 1982 action is going to resolve what happens. Was he improperly held? Yes. Give him money. If no, no big deal. But it doesn't really implicate or conflict with the current situation because he's out already. Your Honor, I think my answer wasn't complete. I did not mean to suggest that somebody who are positioned by any stretch are positioned — in order to bring a 1983 claim, you certainly would have to be out of prison. My point was just the more limited one. As a practical implication, because of the exhaustion requirement of federal habeas, that since one would first have to seek state remedies for people who have very short sentences, it would be the practical case that when you're out — But that isn't the only — the only way for federal habeas. In the B provision, there — it doesn't — you don't have to have exhausted your remedies because it's — or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the prisoner. And, Your Honor, if you're in a circumstance where habeas is available, I — we would concede that — You filed a state habeas. I'm surprised — I know it's mentioned in paragraph 27 of the So you were able to do that, alleging ineffective assistance of counsel in the most serious ways that could have been filed as a federal habeas under the B provision here. Well, Your Honor, that's — Whether that you would have won on it — predecessor counsel, not you — whether you would have won on it or whether they would have been able to process it in time, although I must say it was only filed two months before he was let out of jail. Well, Your Honor, to be sure, the state proceeding that was pending is, as the state argues, and I think with some force, was under state law, the correct proceeding, which is an appeal from the parole board order. But he also had a state habeas. Yes, Your Honor. In the court of common pleas, in Skyfield County. Is that how you pronounce it? Schuylkill. Schuylkill County. This litigant was doing everything possible to try to bring attention to the fact that he was being detained for 366 days beyond a sentence, and he got nowhere with — while the incarceration was running. That's precisely why he falls within this category of individual for — but for providing this 1983 claim to proceed, there would be simply no remedy for his claim of unconstitutional confinement. That's what's truly critical about this case. Haven't we pretty much said in case law that it's really up to the Supreme Court to clarify and we can't pull pieces — I mean, you have Justice Ginsburg and Spencer and Justice Stevens, you know, kind of moving over to the suitor way of thinking, but — and that's really what you're asking us to do, is to attach ourselves to the suitor way of thinking. But the Supreme Court hasn't said that, and haven't we said, you know, if something weakens or undermines what they've said in a directly applicable precedent, too bad. We can't take that as saying they have changed their precedent. Don't we have to wait for the Supreme Court to decide it? Well, Your Honor, two points to that. First, seven other circuits have found that there is enough here, particularly with Muhammad not to feel bound by any dicta from Heck. The second point, though, with respect to this Court's precedent, I think they're certainly not binding on this Court, but subsequent unpublished opinions from the Court, particularly the Mendoza v. Meisel, have adopted precisely the rule we advocate. See, they're not precedential opinions. I had to smile, I must say, when I read your brief and your reply brief castigating the defendants for offering only one defense, that is, that your argument is foreclosed by circuit precedent. That's a pretty good argument. I mean, don't you wish you could make that one? Your Honor, I just think... And we've said in precedent that we don't do, we don't cobble together. We, you know, we leave it to the Supreme Court, the prerogative of overruling its own decisions. I mean, we've said in a precedential opinion that we don't do that. So that is binding. Just, again, Your Honor, the fact that subsequent unpublished opinions, we think, shed considerable light on what the prior published decisions of the Court. Again, we're not suggesting they're binding, but they... But they don't shed light on our rule that we, that a panel of this Court will follow what previous panels have ruled. And we can't even cite them in our opinion. That's right, Your Honor. I'm just suggesting that if it were so clear that Williams and Gillis foreclosed our argument, those subsequent unpublished decisions would be surprising and conflicted. Thank you, Your Honor. Thank you very much. We'll hear from you in rebuttal. Good morning, Your Honors. Alan Robinson. I represent the appellee who redefends Plough, who are former prison and parole officials, some who are still currently employed. The Court, obviously, wrote Gillis and Williams, so you're aware of what those cases say. Appellant is asking the Court to deviate from Heck v. Humphrey itself and from this Court's precedent based on what the other circuits have said. Okay? And there's a few things, I think, in Heck v. Humphrey that the circuits who don't follow it neglect to mention. Okay? All the other circuits that have gotten away from favorable termination fail to recognize that in Heck v. Humphrey, the Supreme Court said this is not a fact-bound issue. Okay? This is a rule. So this is an element, and that's in footnote two, when there was some questions about, you know, it won't apply in this case because my facts aren't exactly the same as those that occurred in Heck v. Humphrey. And that was said in Heck v. Humphrey. The point that I think is also being missed by the other circuits is that those circuits appear to be treating federal habeas as exhaustion and excusing it when that is clearly what Heck v. Humphrey said it is not. Favorable termination is an element of the cause of action. You can't plead a case for wrongful conviction or over-detention based on improper sentencing or sentence calculations without a finding that by a court of jurisdiction within the state or on federal habeas or by expungement or by executive clemency that the case was improper or the sentence was improper. Heck v. Humphrey also talks about finality and the principle that tort actions are not the appropriate means to challenge criminal convictions and sentences. And if you look at this case and you look at who Mr. Deamer sued, and this is distinguishable from all the other cases in all the other circuits, Mr. Deamer does not allege that these people that he sued calculated his sentences. He's saying the parole board revoked my parole after I fled the state and did not award me credit for a time that I was incarcerated in New Jersey. He's claiming as a matter of Pennsylvania law that he's entitled to that credit. The problem is twofold. That's not what Pennsylvania law says, but that's not what I'm here to argue. The problem with that is you have a recommitted parole violator, a sentence has been calculated, and now you have prison officials faced with a claim by an inmate saying, my sentence is wrong, but it's not been reversed, it's not been vacated or anything. What's the prison official supposed to do in that case? Isn't this case different from Heck, though? Because Heck is based upon the concept of the conflict of the intersection of habeas and 1982 and the conflicting results that could be reached. Namely, you're still in prison, your sentence hasn't been overturned, your conviction hasn't been overturned, yet you proceed through 1982 to say that that sentence, the confinement, the conviction was wrong. And if you succeed in that, and you're going to get money, there is a total conflict because you're still in jail and according to the criminal system, your conviction, your sentence was proper. Here, once someone's out, who does it hurt? What's the problem with letting them proceed with a 1982 action to have their rights vindicated through that process? And if they're wrong, that indeed the confinement was appropriate, they'll lose that. If they're right, they'll get money. But it doesn't do anything that is harmful or in conflict with habeas, does it? I think that the problem is, if you look at what the courts say in Wilkinson v. Dodson, that argument was offered by Ohio to say that the favorable termination rule should apply to these things that do not seek money damages, that do not seek to invalidate the fact or duration of confinement. And what the court said in Wilkinson v. Dodson is what Heck v. Humphrey said in 1994, there is no cause of action absent favorable termination. And in rejecting Ohio's argument, it said, yes, the Supreme Court, we've looked at all these considerations and this is the rule that we've come up with. Actually, Wilkinson talks about success necessarily meaning immediate release or a speedier release. In other words, in fact, Wilkinson is the one case that I thought targets the fact, the inconsistency of someone still being in prison that we don't have. I thought Wilkinson actually was more helpful to the appellant than to you. Well, I mean, my read of Wilkinson, Your Honors, is that there's an unequivocal statement that there's no 1983 action absent prior validation, no matter what the relief is. If success in that action would necessarily demonstrate the invalidity of the confinement or its duration. And I think when you look at the footnote that I believe the court cited in Heck, it said, well, the fortuity of release doesn't change things. It doesn't create a federal cause of action. It doesn't relieve the now former inmate of the consequence of needing to achieve favorable termination. But the fortuity of release is kind of, to my mind, a glib statement on Scalia's part. It's not a matter of the fortuity. To me, the concept, I mean, the fact that the person's out isn't just fortuity. It really has meaning because then there is no conflict anymore. Well, I think they've been, in Mr. Deamer's case, at least as far as the parole board is considered, and his case was properly calculated. He was on appeal in Commonwealth Court. It was being reviewed under an appellate standard, and his sentence expired. And I think that's probably what Justice Scalia is talking about. And if you look at what Justice Scalia also says in Spencer v. Kemna, they specifically rejected the argument that habeas does not become moot when someone is released. And one of the arguments offered was that I won't be able to file a 1983 action if you don't let me pursue this habeas. And the court said, these are not my words. That's a great non sequitur. There may be some instances where you may believe something wrong happened, but it's simply not reachable, and it's not reachable here because the elements of the cause of action require favorable termination. And talking about comedy, talking about finality, I have worked for the Pennsylvania Board of Probation and Parole for a fair amount of time, and parole sentence calculation sometimes gets a bit squirrely, for lack of a better term, as far as how the sentences are calculated. And what we're asking here is we're asking the federal court to come in and entertain challenges to sentence calculations that have not even been ruled on by Pennsylvania state courts. I really have, I mean, if you want me to discuss some of the cases, I think, you know, this court has been true to what HEC says. The circuit courts that have gone the other way and have excused favorable termination, if you really look at some of those decisions, I think they tend to mix apples and oranges. We're not here to say you can't file 1983 if you're challenging procedures, okay? And that's what a lot of these cases talk about, prison discipline procedures. They don't talk about you were wrong as a matter of law in the way you calculated the sentence under Pennsylvania state law. Thank you. Thank you. Thank you, Your Honor. Just three points in rebuttal. To begin with, I think as the court pointed out, there's little sense to apply the HEC rule in a case both where there's no possibility of conflict with an existing term of imprisonment. That was really what Congress or what the Supreme Court was concerned about in reconciling the habeas statutes and Section 1983. The view is when somebody's incarcerated, there's a particular procedure with particular limitations in order to pursue that kind of claim. Except there is still a conflict because he is a convicted felon, right? He still is a convicted felon. That has not been undone. Well, that's not been undone, Your Honor. And I think that brings me to my second point, which is closely related. Counsel for the defendants mentioned the favorable termination is baked in or suggested it's baked into the tort claim, as was what Justice Scalia discussed in the HEC claim. However one may view that being for terms of a claim that resembles malicious prosecution, that is simply not the kind of claim that Deamer presses in this case because he's not challenging the fact as to whether or not he was a convicted felon. Success on his claim here would in no sense impugn whether or not he was a convicted felon. That's accepted. All that is being challenged in this case is whether or not his release date was properly calculated. If he succeeds, again in no way does it suggest his conviction was unlawful, that his parole revocation was unlawful in any sense. All that is being challenged is his credit for 366 days of confinement, to which under Pennsylvania law he has a very strong argument he was legally entitled to. Although under habeas, the duration of confinement is treated just like a conviction or anything else. It's one of the bases for your habeas. Your Honor, that's precisely right. And we don't suggest that heck doesn't apply to this case because our challenge is conditions of confinement. But I think that is actually a very strong reason why favorable termination, the malicious prosecution theory of favorable termination, cannot be what's doing the work in heck to get to the favorable termination rule. Because if that were, as you just explained, the fact that heck applies for challenges like ours, which are about length of conviction, not just fact of underlying incarceration, again that has no apt analog here. So what I think that demonstrates is what's really doing the work in heck and deriving the heck rule is the reconciliation of Section 1983 and habeas. And again, that reconciliation here points very strongly in favor of permitting a claim to proceed. Again, as other circuits who have looked at this question have concluded, in order to say that an individual who loses a 1983 claim, again Congress wrote a very broad Section 1983 statute, there would need to be an unambiguous statement from Congress displacing that claim. Now, to be sure, there is in the context of an incarcerated individual, the displacement comes from the fact that there's a federal habeas statute that is far more specific and provides their sole remedy. But when an individual can never bring a federal habeas claim, there's no suggestion by Congress that Section 1983 has been displaced. And it truly would take congressional action in order to say that a claim like this has been preempted. So you return to the issue, you say at page two of your brief, the opening brief, that as the district court found, and I think that's a very broad overstatement, this case squarely presents the question whether heck applies in circumstances where a claimant through no fault of his or her own never had access to federal habeas. That's your position here, right? You're saying your client never had access to federal habeas, and therefore we should grant relief here. Well, Your Honor, because of the lack of access is why the Section 1983 claim is not barred. If he could have brought a claim through habeas, it would be a very different circumstance, but it's never been suggested by our opponent, by the lower court, that he had access to federal habeas in this case. Well, that's why I questioned you earlier on the B provision of the habeas statute, and it seems to me you did have access. You just didn't use it. Well, Your Honor, I think in this case, as typically, to be sure there will be exceptions, but it is typically the case there is a requirement for exhaustion, which Mr. Diemer was actively pursuing. That's an alternative requirement, the at-sea aid provision. Yes, Your Honor, and I think, though, in most cases, including this case, a federal habeas claim would be channeled through the A provision, and in these circumstances, that's why he didn't have access to habeas and why the Section 1983 claim. Because even though there was a B provision, he had to go through the A provision when Congress has used the word or? Well, Your Honor, I think the circumstances of this case would make this an A provision, and again, I fall back to there's been no suggestion from the government, the defense in this case, that this could have been alternatively pursued as a B, and I think this would have been a classic case in the A situation. Thank you, Your Honor. If Mr. Diemer had succeeded in a habeas, then the case would be moot. Well, Your Honor, it could be moot, or it's possible he could have a subsequent 1983 action, because if he succeeded in federal habeas, that would be the favorable termination that would have satisfied the HEC requirement. And then he would no longer be in custody to bring his claim. Well, Your Honor, there would be no in custody requirement for the Section 1983 claim. So if he had been able to bring a federal habeas, if he had prevailed on that, been released from prison, that I think squarely would have been the kind of favorable termination that HEC considered, and that certainly would have allowed him then to subsequently pursue a claim for damages, arguing that there was a constitutional violation. All right. Thank you. And thank you to Mayor Brown for taking this case on. We very much appreciate it. Cases, we'll argue, were taken under advisement.